# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| FREDDIE WAH, | ) |
| Petitioner, | ) ) ) |
| vs. | ) Case No. 14-0506-CV-W-DW-P ) |
| LARRY DENNEY, | ) ) |
| Respondent. | ) ) |

## OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY

Petitioner, a convicted state prisoner currently confined at the Crossroads Correctional Center in Cameron, Missouri, has filed pro se a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2006 conviction and sentence for assault in the first degree, murder in the second degree, robbery in the first degree, and three counts of armed criminal action.

Petitioner raises three (3) grounds for relief: (1) petitioner's actual innocence based on a co-defendant's recent "sworn recantation" exonerating petitioner; (2) insufficient evidence to prove petitioner's guilt beyond a reasonable doubt; and (3) ineffective assistance of trial counsel.

Respondent contends that the grounds raised are insufficient to warrant issuance of a writ of habeas corpus. Specifically, respondent contends that: Ground 1 is not cognizable on federal habeas review, and that Grounds 2 and 3 are without merit.

## FACTUAL BACKGROUND

On direct appeal, the Missouri Court of Appeals summarized the facts, as follows:

> On the evening of January 16, 2004, [petitioner], and his cousin, Michael Gregg, decided to rob George Braxton, who lived downstairs from Gragg in the same apartment building. They chose Braxton because he was nearby and, earlier in the day, Braxton had visited Gragg to pay a debt he owed Gragg. When

Braxton pulled out his money to get a $10 bill, Gragg saw that Braxton had a couple of $100 bills.

After [petitioner] and Gragg decided they would rob Braxton later that night, [petitioner] left to run an errand. [ . . . ] Around 11:00 p.m., [petitioner], Gragg, and Wright left in Wright's truck. The men drove around for a while and smoked cigarettes dipped in PCP before going to Gragg's apartment building. When they arrived, Gragg and [petitioner] got out of the truck. Gragg stopped to urinate, while [petitioner] kept walking towards the building.

At this time, Braxton was in the living room of the apartment he shared with Lisa Hawkins. Hawkins heard someone knocking on the back door, which opened directly to an outside alley. She unlocked and partially opened the door. Although [petitioner] was wearing a big coat and had a scarf masking the bottom part of his face, Hawkins thought he was someone that she knew, so she left the door open and turned to walk back to the living room.

[Petitioner] pushed the door open and grabbed Hawkins around her neck. He held a gun to her and pushed her toward the living room. Braxton jumped up and asked what was going on. Braxton started pleading with [petitioner] while inching toward a baseball bat that was nearby in the apartment. [Petitioner] shot Hawkins and then shot Braxton. While Braxton was on the ground, [petitioner] reached into Braxton's pocket and stole his money. Hawkins got up and hit [petitioner] with the bat as he tried to escape out the back door. Hawkins also grabbed [petitioner]'s jacket and pulled down his hood, revealing his braided hair. [Petitioner] got away from Hawkins and left though the back door.

While [petitioner] was inside Braxton's and Hawkin's apartment, Gragg returned to the truck, where he and Wright waited for [petitioner]. [Petitioner] was inside the apartment for approximately ten minutes. When he came back to the truck, he told Gragg and Wright that the robbery "got fucked up and didn't come out right." [Petitioner] also said that he had been hit with a baseball bat. Gragg noticed that one of [petitioner]'s eyes was puffy. [Petitioner] asked Gragg if he thought Wright would tell anyone about the robbery, but Gragg told him Wright would not. As they were driving away, Wright noticed [petitioner] counting money. Wright asked [petitioner] if he wanted to sell his gun. Gragg was unsure what gun they were talking about, but he knew [petitioner] owned a .380-calibur gun. Wright eventually dropped off Gragg and [petitioner], and they went their separate ways.

> Meanwhile, the police arrived at the apartment and found Braxton dead at the scene. Hawkins was taken to a hospital, where she was treated for five bullet wounds to her intestines. Investigators found several shell casings from a .380-calibur automatic firearm in the apartment.
>
> The police later received a tip that Wright had driven Braxton's killer to and from Braxton's and Hawkins' apartment. A detective interviewed Wright, who mentioned Gragg's and [petitioner]'s involvement. The detective then interviewed Gragg, who he said was with Wright and [petitioner] on the night of the incident. [Petitioner]'s hair was in braids when the detective interviewed him on February 10, 2004. The detective obtained a photograph, taken six days after the incident, that also showed [petitioner] with braided hair.

(Doc. No. 8 - 8, Ex. H, pp. 2 – 4)

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc), cert. denied, 469 U.S. 842 (1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254 (e)(1).[1] Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## GROUND 1

Petitioner claims multiple times in the petition that he is innocent of the crimes for which he was convicted because a co-defendant later recanted his statement that petitioner had been present on the evening of the crime. The Court construes this as a claim of actual innocence.

---

[1] In a proceeding instituted by an application for writ of habeas corpus by a person in custody pursuant to a judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

However, as respondent notes, a freestanding claim of actual innocence cannot, in itself, provide habeas relief. See Herrera v. Collins, 506 U.S. 390, 400 (1993) ("This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution - not to correct errors of fact."). "Federal courts are not forums in which to relitigate state trials [or guilty pleas]," Barefoot v. Estelle, 463 U.S. 880, 887 (1983), and, therefore, petitioner must present an independent constitutional violation other than his innocence to be afforded habeas relief.[2]

Ground 1 is denied.

## GROUND 2 – INSUFFICIENT EVIDENCE

In Ground 2, petitioner contends that he did not receive a fair trial because the state failed to prove petitioner's guilt beyond a reasonable doubt and the jury was presented with insufficient evidence to convict.[3] (Doc. No. 1, p. 6).

A federal habeas court may not overturn a state court decision regarding a sufficiency of the evidence challenge simply because it disagrees with the state court; a federal court may only overturn the decision if it was "objectively unreasonable." Cavazos v. Smith, 132 S. Ct. 2, 3 (2011). On direct appeal, the Missouri Court of Appeals, Western District, denied petitioner's claim as follows:

> Wah's sole claim on appeal is that the evidence was insufficient to support his convictions. When reviewing a challenge to the

---

[2] This is not to say that actual innocence is completely irrelevant to federal habeas proceedings. A claim of actual innocence may be used as a gateway to overcome the procedural default of other claims. See Schlup v. Delo, 513 U.S. 298 (1995). However, petitioner does not present his claim in this way.

[3] In Ground 2, petitioner also alleges that "trial counsel did not present a defense of alibi as rebuttal to the [S]tate's eyewitnesses testimony and the jury reached its verdict of guilty based on the insufficient evidence." This is duplicative of the allegations set forth in Ground 3, alleging ineffective assistance of trial counsel for failure to present an alibi defense to rebut the State's eyewitnesses. That ground for relief will be discussed separately.

sufficiency of the evidence to support a conviction, appellate review "is limited to determining whether sufficient evidence was admitted at trial from which a reasonable trier of fact could have found each element of the offense to have been established beyond a reasonable doubt." *State v. Burrell*, 160 S.W.3d 798, 801 (Mo. banc 2005). In this case, Wah does not dispute that the evidence established that someone committed the first-degree assault on Hawkins, the first-degree robbery, and second-degree murder of Braxton, and the corresponding armed criminal action charges. Instead, Wah argues the evidence was insufficient to support the jury's finding that *he* committed the crimes.

Evidence supporting the jury's finding that Wah committed the crimes included Gragg's and Wright's testimony implicating Wah. Gragg testified that he and Wah planned the robbery earlier in the evening and picked Braxton as their victim. Gragg and Wright both testified that Wright drove Gragg and Wah to Braxton's and Hawkins' apartment building and Wah went into the building. Gragg testified that he heard gunshots while Wah was in the building. Gragg testified that Wah owned a .380-caliber gun, which was the type of gun used to shoot Hawkins and Braxton. Gragg testified that, when Wah returned to Wright's truck, Wah remarked that the robbery "didn't come out right." Wright testified that he saw Wah counting money as they drove away, and both Gragg and Wright testified that Wah gave them money afterwards.

Gragg's and Wright's testimony implicatingWah was corroborated by Hawkins's testimony. Hawkins testified that the assailant had braided hair. Gragg, Wright, and Gragg's girlfriend testified that, on the night of the incident, Wah's hair was braided. A picture of Wah taken a few days after the incident showed that his hair was braided. Hawkins testified that the assailant wore a scarf masking his face. Wright testified that Wah was wearing a white scarf around his neck. Hawkins also testified that, before the assailant escaped, she hit him with a baseball bat. Gragg and Wright both testified that Wah complained that he had been hit by a bat while in the apartment, and Gragg saw that one of Wah's eyes was puffy.

This evidence was sufficient to support the jury's finding that it was Wah, and not someone else, who committed the crimes for which he was charged. Wah contends, however, that the testimonies of Gragg and Wright were so contradictory, inconsistent, and unreliable that further corroborative evidence should be required to affirm the jury's verdict. To support his claim, Wah points out the inconsistencies in the testimony of the

two witnesses, conflicts in the State's evidence, and evidence of Gragg's and Wright's potential bias.

All of this contrary evidence was before the jury. The jury chose to believe the evidence that implicated Wah. It was within the jury's province to do so. The jury can believe "all, some, or none" of a witness's testimony in arriving at its verdict. *State v. Jackson*, 608 S.W. 2d 420, 421 (Mo. 1980). It is for the jury, not the reviewing court, to determine the credibility of the witnesses and resolve any conflicts in the testimony. *State v. Pond*, 131 S.W.3d 792, 794 (Mo. banc 2004).

No further corroboration of the testimony from Gragg and Wright was necessary. Wah notes that we have required corroboration of an alleged sex-crime victim's testimony under certain circumstances. Specifically, we have required corroboration where "'the victim's testimony is so contradictory and in conflict with physical facts, surrounding circumstances and common experience, that its validity is thereby rendered doubtful.'" *State v. Slack*, 835 S.W.2d 308, 310 (Mo. banc 1992)(citation omitted). However this case does not involve a sex crime, and neither Gragg nor Wright was an alleged victim. Moreover, the corroboration rule has not been extended beyond sex crime cases, despite prior requests to do so. *State v. Case*, 140 S.W. 3d 80, 91-92 (Mo. App. 2004). We decline to extend it to this case.

Wah argues that we should consider all of the evidence in the record and the source of the evidence to determine whether the jury acted reasonably in finding him guilty beyond a reasonable doubt. Although Wah recognizes appellate courts do not reweigh the evidence or reevaluate the witnesses' credibility, that is exactly what he is asking us to do. This is contrary to Missouri's well-established standard of review - - a standard that the Missouri Supreme Court has declared "echoes the due process standard announced by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)." *State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc 1993). In reviewing the evidence to determine whether it is sufficient to support the jury's verdict, we accept as true all evidence and inferences favorable to the verdict and disregard all contrary evidence and inferences. *Id*. We defer to the jury's superior position to assess the witnesses' credibility and the weight and value of the testimony. *State v. Johnson*, 244 S.W. 3d 14, 152 (Mo. banc 2008). Pursuant to this standard of review, the evidence was sufficient to support the jury's finding that Wah committed the crimes for which he was charged. Wah's point is denied.

(Respondent's Exhibit H, pp. 5-8).

The Missouri Court of Appeals' resolution of petitioner's claim was not based on an unreasonable determination of the facts or on a misapplication of federal constitutional law. See 28 U.S.C. 2254(d)(1) and (2); Jackson v. Virginia, 443 U.S. 307, 319 (1979) (constitutional standard for judging sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt"). Because the appellate court's ruling did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"[4] or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," see U.S.C. § 2254(d)(1) and (2), Ground 2 will be denied.

## GROUND 3 – INEFFECTIVE ASSISTANCE OF COUNSEL

In ground 3, petitioner contends that trial counsel was ineffective for failing to call his girlfriend and her mother as alibi witnesses.

In order to succeed on a claim of ineffective assistance of counsel, petitioner must establish that: (1) his counsel's performance was unreasonable as viewed in the totality of the circumstances; and (2) his defense was prejudiced by counsel's action in that there is a

---

[4] According to the concurrence of Justice O'Connor, joined by four other members of the Court, "under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams v. Taylor, 529 U.S. 362, 412-13 (2000).

reasonable probability that, but for counsel's unprofessional acts, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 694-95 (1984); Schaeffer v. Black, 774 F.2d 865, 867 (8th Cir. 1985). Reasonably effective assistance of counsel may be defined as the skill and diligence that a reasonably competent attorney would exercise under similar circumstances. See, e.g., Strickland v. Washington, 466 U.S. at 687-90. Judicial scrutiny of counsel's performance must be highly deferential, id. at 689, and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

On appeal from the denial of his Rule 29.15 motion, the Missouri Court of Appeals disposed of petitioner's claims as follows:

> In point one, [petitioner] contends that the trial court erred in denying his motion for a new trial based on ineffective assistance of counsel because [petitioner]'s counsel did not call the Tatums to testify on his behalf as alibi witnesses. [Petitioner] asserts the evidence was sufficient to prove his trial counsel was ineffective in failing to present these witnesses at trial.
>
> "To be entitled to post-conviction relief for ineffective assistance of counsel, the movant must satisfy a two-prong test." *Zink v. State,* 278 S.W.3d 170, 175 (Mo. banc 2009). The movant must show that his counsel failed to exercise the level of skill and diligence that a reasonably competent counsel would exercise in a similar situation and that trial counsel's failure prejudiced the defendant. *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Both the performance and prejudice elements must be shown by a preponderance of the evidence. *Id.* (citing *Anderson v. State*, 196 S.W.3d 28, 33 (Mo. banc 2006)).
>
> There exists a strong presumption that counsel's conduct was reasonable and effective. *Id.* at 176. To overcome this presumption, the movant must point to "specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance." *Anderson*, 196 S.W.3d at 33 (citation omitted). Counsel's choice of one reasonable trial strategy over another is not ineffective assistance. *Zink,* 278 S.W.3d at 176 (citation omitted).

The movant must also demonstrate that, absent the claimed errors, there is a reasonable probability that the outcome would have been different. *Id.* (citation omitted). "To prevail on a claim of ineffective assistance of counsel due to counsel's failure to call a witness to testify, the defendant must show that the witness would have testified if called and that the witness's testimony would have aided the movant's defense." *State v. Johnson*, 901 S.W.2d 60, 63 (Mo. banc 1995) (citation omitted).

In 2011, the trial court held three short evidentiary hearings. The first "alibi witness" was Neisha Tatum ("Neisha"), [petitioner]'s girlfriend at the time of the shooting and the mother of his child. The second was her mother, Theresa Tatum ("Theresa").

Neisha testified that on the evening of January 16, 2004 (seven years prior), [petitioner] was at home with her and that she specifically recalled he was home because their two-year-old daughter had eaten spicy food that day and had a red "boo-boo" [bowel movement]. Theresa, with whom Neisha and her daughter live, also testified as to these same facts. Neisha testified that she was not aware that [petitioner] gave a statement to police on February 10, 2004, in which he did not mention any of this. Both Neisha and her mother attended parts of the trial but neither came forward with this alibi testimony until the evidentiary hearing on the post-conviction motion and neither approached [petitioner]'s attorney with this information at or before trial.

[Petitioner]'s statement to the police after his arrest was that he "made a living selling marijuana and crack on Troost" and that he was "probably selling drugs at Armour and Troost" that night but that he was not sure. [Petitioner] admitted selling drugs to a man who fit the description of the victim in the past. [Petitioner] later stated that he was at home on the night of January 16. When asked how he knew that for sure, [petitioner] stated: "I just feel it. . . I know I was at home." He then said there was an "eighty percent chance" that he was home that night.

[Petitioner] did not address where he was on the evening of the crimes at his motion hearing. He did testify that he told his trial counsel about the Tatums and requested that they be called as witnesses. But [petitioner] also testified that he did not personally testify at trial "because he didn't have no alibi witnesses." [sic] He insisted that he gave his attorney the address (Tatum's home) of where he was the night of the murder.

[Peititoner]'s defense attorney, Daniel Ross ("Ross") testified that he did not recall there being a viable alibi witness and if there had been, he would have called that person to testify since his defense theory was that [petitioner] was not the shooter. Ross recalled meeting both Tatums but denied being told that they could provide a credible alibi. Ross further testified that he had been in a criminal defense practice for thirty years and had developed a checklist of things he went over with every client. He testified that he did not recall [petitioner] telling him about any potential alibi witnesses. He further stated: "The fact that I didn't use alibi suggests that, if they had told me about an alibi, there was some reason I chose not to use it . . . a bad alibi can be devastating."

Ross further testified that he remembered meeting [petitioner]'s mother, Brenda Wah ("Brenda") because she was very "proactive" and attended the trial. Brenda confirmed that she attended and stated that she was the person who had asked the Tatums to also attend the trial. Brenda testified that she gave Ross their names and asked Ross at trial when he was going to call them. According to Brenda, Ross told her that he would call them if he needed them.

After conducting three evidentiary hearings, the trial court denied [petitioner]'s motion on this alleged point of error and issued its findings of fact and conclusions of law. The court concluded that trial counsel made a reasonable, strategic decision not to call the Tatums to testify concerning the bowel movement incident because there was no corroborating evidence of it, including none from [petitioner], anywhere in the record. In addition, although Ross recalled "a halfway alibi" being discussed, it was a strategic decision not to pursue it based on the statement [petitioner] gave to police on February 10, in which he claimed he was probably elsewhere selling drugs. Moreover, the Tatums' respective relationships to [petitioner] create an presumption of bias in that Neisha is the mother of his child and Theresa is the grandmother of his child-- the presumption being that they clearly have an interest in not having [petitioner] incarcerated.

A strategic trial decision by counsel cannot be grounds for ineffective assistance due to the deference given counsel in making such decisions. Thus, counsel's decision not to call the Tatums to testify, in light of all the circumstances, did not fall "outside the wide range of professional competent assistance." *Anderson*, 196 S.W.3d at 33 (citation omitted). Because [petitioner] failed to prove that his counsel's performance was incompetent, we need not address the second prong of the *Strickland* test, prejudice, on this point.

> We find no clear error in the trial court's denial of [petitioner]'s claim that his trial counsel was ineffective for failing to call the Tatum's to testify, nor are we left with a definite and firm impression that a mistake has been made. Point one is denied.
>
> The judgment is affirmed.

(Doc. No. 8 - 16, Ex. N, pp. 9 – 12)

The resolution of ground 3 by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 412 (2000). Applying the Strickland standard of review to the facts as set forth in the record, the Court finds that counsel was not ineffective.

Ground 3 is denied.

## CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." Tennard v. Dretke, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. See 28 U.S.C. § 2254, Rule 11(a).

Accordingly, it is **ORDERED** that:

(1) the petition for writ of habeas corpus is **DENIED**;

(2) the issuance of a certificate of appealability is **DENIED**; and

(3) this case is **DISMISSED** with prejudice.

        /s/ Dean Whipple
        DEAN WHIPPLE
        UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated:  November 17, 2015 .